**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                               PLAINTIFF

v.                                              No. 4:09CR00276 JLH

TRACY CLEMONS                                                                            DEFENDANT

**OPINION AND ORDER**

Tracy Clemons was indicted and went to trial on charges of mail fraud and money laundering in connection with his logging business, Clemons Timber, Inc., which contracted to cut and haul logs for Deltic Timber Corporation. The indictment alleged and there was evidence to prove that Clemons engaged in a scheme to defraud Deltic by diverting Deltic-owned pine saw logs so that he or his company received funds that should have been paid to Deltic. The contracts between Deltic and Clemons Timber required Clemons Timber to haul pine saw logs to Deltic's sawmill in Ola, Arkansas. Although Clemons Timber hauled a large quantity of pine saw logs to Deltic's sawmill in Ola, Clemons also directed his drivers to haul some of Deltic's pine saw logs to a mill owned by a competitor, Green Bay Packaging, in Menifee, Arkansas. Clemons' drivers would present Green Bay with a card indicating that the logs were being sold through a timber brokerage company, North Arkansas Wood, which was owned by Clemons' mother and which had an agreement with Green Bay for the delivery of logs. Green Bay mailed to North Arkansas Wood settlement reports along with checks to pay for timber that had been delivered under North Arkansas Wood's agreement with Green Bay. North Arkansas Wood wrote checks to Clemons Timber, which, in turn, wrote checks to Clemons, who then deposited those checks into a personal account. In effect, Clemons stole timber from Deltic, used North Arkansas Wood to sell the timber to Green Bay, and then pocketed the proceeds from the sale of the stolen timber.

The indictment charged Clemons with 65 counts of mail fraud and 116 counts of money laundering. The mail fraud counts are based on 65 occasions when Green Bay mailed settlement reports and checks to North Arkansas Wood. In each of the 116 counts of money laundering, the financial transaction alleged to constitute money laundering was the issuance of a check from Clemons Timber to Clemons.

The Court reserved ruling on Clemons' motion for judgment of acquittal until after the jury returned its verdicts. The jury convicted Clemons on all 181 counts. After the jury returned its verdicts, the Court denied the motion for judgment of acquittal on the mail fraud counts and requested briefs on the money laundering counts. The briefs have been submitted. For the reasons that follow, the Court grants Clemons' motion for judgment of acquittal on the money laundering counts.

Rule 29(a) of the Federal Rules of Criminal Procedure provides that, after the government closes its evidence or after the close of all of the evidence, the Court must on the defendant's motion enter a judgment of acquittal concerning any offense for which the evidence is insufficient to sustain a conviction. Rule 29(b) provides that the Court may reserve decision on the motion, proceed with the trial, submit the case to the jury, and decide the motion either before or after the jury returns a verdict. If the Court reserves decision, the motion must be decided on the basis of the evidence at the time the ruling was reserved. The standard of review is highly deferential to the jury's verdict, which can be reversed "only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Wells*, 646 F.3d 1097, 1102 (8th Cir. 2011) (quotation omitted). The Court must "view the evidence in the light most favorable to the guilty verdict,

granting all reasonable inferences that are supported by the evidence," and the Court "may not weigh the evidence or assess the credibility of witnesses." *Id.*

The indictment charged Clemons with violating 18 U.S.C. § 1956(a)(1)(B)(i). To obtain a conviction under that statute the government had the burden of proving the following essential elements:

(1) Clemons conducted a financial transaction, that is, he caused checks to be written that affected interstate or foreign commerce;

(2) Clemons caused the financial transaction with checks that involved the proceeds of the theft of timber from Deltic Timber Corporation through the scheme to defraud;

(3) At the time Clemons caused the financial transaction to be conducted, he knew that the checks represented the proceeds of some form of unlawful activity; and

(4) Clemons caused the financial transaction to be conducted knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the theft of timber from Deltic Timber Corporation through the scheme to defraud.[1]

The issue is whether the evidence was sufficient on the fourth element: whether the financial transactions alleged to constitute money laundering, that is, the checks from Clemons Timber to Clemons, were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the theft of pine saw logs from Deltic Timber.

As mentioned above, the government presented evidence sufficient to prove that Clemons entered into a scheme to defraud Deltic Timber and, as a part of that scheme, directed his drivers to deliver Deltic pine saw logs to Green Bay under the account of North Arkansas Wood. Green Bay periodically made payments to North Arkansas Wood, which in turn made payments to Clemons

---

[1] This recitation of the elements substantially repeats the elements instruction that was given, without objection, at trial. Document #66, Jury Instr. No. 11. *See also United States v. Phythian*, 529 F.3d 807, 813 (8th Cir. 2008) (listing for money laundering elements).

Timber. The evidence established that during the relevant period of time (August 2005 through February 2007), North Arkansas Wood paid approximately $406,000 to Clemons Timber for timber stolen from Deltic and sold to Green Bay. Those funds were deposited into the Clemons Timber business account. During the same period of time, funds totaling more than $1,900,000 were deposited into the Clemons Timber business account from other sources. Most of that amount—more than $1,600,000—represented payments from Deltic Timber. During that same period of time, Clemons Timber wrote 116 checks totaling slightly more than $50,000 drawn on the Clemons Timber business account and made payable to Tracy Clemons. The vast majority of the checks were made in sums of $312.91, $312.93, and $400, with a handful of checks made in larger amounts. The government proved that the checks were issued from the Clemons Timber account, made payable to Tracy Clemons and then deposited into a personal account of Tracy Clemons and his wife. The government offered no proof as to the purpose of these payments.[2] As the Eighth Circuit said in another case, "it is apparent that the government offered no particularized proof of the 'designed to conceal' element of" § 1956(a)(1)(B)(i). *United States v. Shoff*, 151 F.3d 889, 892 (8th Cir. 1998).

The government does not contend that it presented direct evidence that the checks from Clemons Timber to Clemons were designed to conceal the nature, location, source, ownership or control of the proceeds of the theft. Instead, the government argues, the question is one of intent, which "frequently cannot be proven except by circumstantial evidence." *United States v. Dvorak*, 617 F.3d 1017, 1023 (8th Cir. 2010) (quoting *Phythian*, 529 F.3d at 812). To prove intent, the

---

[2] Celina Clemons, Tracy Clemons' wife and bookkeeper for Clemons Timber, testified during the defendant's case-in-chief that the smaller checks represented salary payments, while the larger checks constituted repayment of funds that Tracy Clemons had loaned to the business.

4

government argues that the Court should not look at the checks in isolation because those checks were part of a larger scheme designed to conceal illegal proceeds. In its summary of the evidence that it contends proves the "design to conceal" element, the government states:

> [T]he United States offered evidence that Tracy Clemons, acting for himself through Clemons Timber, diverted Deltic-owned pine saw logs through North Arkansas Wood, a third party, to obtain money from Green Bay Packaging that Deltic was legally entitled to receive, moneys which were funneled through North Arkansas Wood into the Clemons Timber account where the funds were commingled with legitimate funds, including over 1.6 million dollars from Deltic, and then disbursed to Clemons personally. This is a common type of money laundering which involves the commingling of illegal proceeds with the identity of the funds of a legitimate and usually pre-existing business.

U.S. Post-Trial Brief, p. 2. The government notes that such commingling effectively conceals the nature, source, ownership, and control of the unlawful proceeds, and that the use of a third party from which one will benefit usually constitutes sufficient proof of a design to conceal.

It is certainly true that intent typically must be proven by circumstantial evidence and that it is necessary to view the transactions in light of the larger scheme. Even so, the scheme that the government describes in its summary of the evidence quoted above is the mail fraud scheme. The issue here is not whether the government proved mail fraud; it did. The issue here is whether the government proved that Clemons committed the crime of money laundering when checks were written from the Clemons Timber business account to him.

In construing a different subsection of the money laundering statute, the Supreme Court has held that the term "design" means purpose or plan. *Cuellar v. United States*, 553 U.S. 550, 563-64, 128 S. Ct. 1994, 2003, 170 L. Ed. 2d 942 (2008). In *Cuellar*, the section at issue was 18 U.S.C. § 1956(a)(2)(B)(i), which makes it unlawful to transport funds outside the United States "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of

specified unlawful activity[.]" Cuellar, the defendant, hid illicit proceeds in a secret compartment in an automobile and attempted to drive the automobile from the United States into Mexico. Even though it was obvious he had hidden the funds in order to conceal them during the trip, the Supreme Court held that that evidence was insufficient to establish a violation of the money laundering statute because "[t]he evidence suggested that the secretive aspects of the transportation were employed to *facilitate* the transportation . . . but not necessarily that secrecy was the *purpose* of the transportation." *Id*. at 567, 128 S. Ct. at 2005 (emphasis in original). Here, by parallel reasoning, the government was required to prove that the purpose (in whole or in part) of the checks written from Clemons Timber to Clemons was to conceal or disguise the nature, location, source, ownership or control of the proceeds of the mail fraud.

While it is true that Clemons used a third party, North Arkansas Wood, to obtain money that belonged to Deltic, and while it is also true that he commingled the funds with legitimate funds in his business account, those transactions were not charged as the financial transactions that constituted the money laundering. Again, the transactions that allegedly constituted the money laundering were the issuance of checks from the Clemons Timber business account to Clemons. Even viewing those transactions in light of the larger scheme, the circumstances do not prove that the design or purpose in writing checks from the Clemons Timber business account to Clemons personally was to conceal or disguise anything. Unlike *Dvorak*, there is no circumstantial evidence that Clemons withdrew money from the Clemons Timber business account for the purpose of concealing the location of the funds. Dvorak made cash withdrawals of the entire amount of the fraudulently obtained Medicaid checks, emptying the account completely soon after deposit. *Dvorak*, 617 F.3d at 1024. This "conduct was far from being the sort of ordinary commercial

behavior that, by itself, courts have found insufficient to constitute money laundering, such as . . . writing a check." *Id*. Here, the proceeds from the mail fraud were not taken out in cash; instead, checks that appear to be ordinary commercial behavior were written to Tracy Clemons. "[T]he simple transfer of money from one bank account to another does not constitute money laundering." *Id*. at 1022. Likewise, the "money laundering statute may not be so broadly construed that it becomes a money spending statute." *Id*. at 1023 (internal quotation marks omitted).

What were the checks from Clemons Timber to Clemons designed to conceal or disguise? What is it about the circumstances that proves that these checks—the financial transactions charged as money laundering—were designed to conceal or disguise something? Those are the questions; the government never answers them.

As the Tenth Circuit has said:

> Merely engaging in a transaction with money whose nature has been concealed through other means is not in itself a crime. In other words, the government must prove that the specific transactions in question were designed, at least in part, to launder money, not that the transactions involve, money that was previously laundered through other means.

*United States v. Garcia-Emanuel*, 14 F.3d 1469, 1474 (10th Cir. 1994). *See also United States v. Caldwell*, 560 F.3d 1214, 1222 (10th Cir. 2009) ("Money laundering requires more than simply writing a check with the proceeds of unlawful activity.").

The Seventh Circuit has explained:

> We have struggled in the past to define precisely what amount of concealment must occur before mere use of ill-gotten gains becomes money laundering prohibited by subpart (B)(i) of the statute. At least two broad principles have emerged. First, we have tried to maintain some separation between the initial transaction from which illegal proceeds were derived and further transactions designed to conceal the source of those proceeds. See *United States v. Scialabba*, 282 F.3d 475, 476-78 (7th Cir. 2002); see also *United States v. Seward*, 272 F.3d 831, 836 (7th Cir. 2001) (noting that "[t]he transaction or transactions that created the criminally-derived proceeds

must be distinct from the money-laundering transaction"); *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998) ("[M]oney laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds."). Second, we have stressed that the mere transfer and spending of funds is not enough to sweep conduct within the money laundering statute; instead, subsequent transactions must be specifically designed "to hide the provenance of the funds involved." *United States v. Jackson*, 935 F.2d 832, 843 (7th Cir. 1991).

*United States v. Esterman*, 324 F.3d 565, 570 (7th Cir. 2003). Here, the government's argument runs afoul of both of these principles. First, the government's argument maintains no separation between the transaction from which the illegal proceeds were derived and subsequent transactions that allegedly constituted the money laundering. Second, the government's argument would mean that the mere transfer and spending of proceeds of the mail fraud constituted money laundering without any evidence that the subsequent transactions, the checks from Clemons Timber to Clemons, were designed to hide the provenance of the funds involved. *See also Shoff*, 151 F.3d at 891-92 (refusing to conflate mail fraud and money laundering and holding that merely spending the proceeds of mail fraud does not constitute money laundering).

In summary, the government offered no evidence that the checks from Clemons Timber to Clemons were designed to conceal anything. The defendant's motion for judgment of acquittal on Counts 66 through 181 is granted.

IT IS SO ORDERED this 14th day of November, 2011.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

8